# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRU DANTOS, a.k.a. Alexander Dantos, a.k.a. Alexandrew Dantos,<br><br>                  Petitioner,<br><br>vs.<br><br>ERIC H. HOLDER JR., Attorney General,<br><br>                  Respondent. | CASE NO. 10CV417-MMA (BLM)<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 11] |

This matter originated as a petition for review of a removal order filed in the United States Ninth Circuit Court of Appeals pursuant to 8 U.S.C. § 1252. Upon its determination that a genuine issue of material fact regarding Petitioner's nationality existed, the Court of Appeals transferred the matter to this Court for a *de novo* hearing to make a determination of Petitioner's nationality claim pursuant to 8 U.S.C. § 1252(b)(5)(B). The parties stipulated to the Respondent's filing of a motion for summary judgment in lieu of a hearing to resolve the issue now before the Court.

## BACKGROUND

### I. Petitioner's Citizenship

On November 18, 1982, Petitioner Alexandru Dantos was born in Romania. (*Pet'r's Opp'n*, Ex. C at 1, Ex. D at 1; *Resp't's Mot. for Summ. J.*, Ex. F.) On August 7, 1991, the United States admitted Petitioner, his parents, and his sister as Lawful Permanent Residents. (*Pet'r's Opp'n*, Ex. C at 1, Ex. D at 1.) On July 28, 1999, when Petitioner was 16 years old, his mother, Carmen Dantos, became a naturalized citizen. (*Resp't's Mot. for Summ. J.*, Ex. E; *Pet'r's Opp'n*, Ex. E.) In or around

1  July 2003, when Petitioner was 20 years old, Petitioner's father, Gheorghe Dantos, returned to
2  Romania. (*Pet'r's Opp'n*, Ex. C at 2, Ex. D at 3.) In September 2005, Ms. Dantos moved to North
3  Carolina to be with her daughter. (*Id.,* Ex. C at 2, Ex. D at 4.) On February 26, 2007, while living in
4  North Carolina, Ms. Dantos filed for divorce. *(Id.*, Ex. A.) On June 7, 2007, a North Carolina Family
5  Court granted an absolute divorce. (*Id.*) In the Order, the Court found that Mr. and Mrs. Dantos
6  "separated on or about July 2003, and have lived continuously separate and apart from each other for
7  more than one (1) year next preceding the institution of this action with the intention on the part of
8  Plaintiff not to resume the marital relationship." (*Id.*)

9  **II.    Immigration Proceedings**

10         On August 2, 2005, Petitioner was convicted on three counts of receiving stolen property in
11 violation of Cal. Penal Code § 496(a). (*Resp't's Mot. for Summ. J.*, Ex. A at 003, Ex. F at 017–019,
12 Ex. G at 025.) On June 28, 2006 and December 12, 2006, Petitioner was convicted of possession of
13 a controlled substance in violation of Cal. Health & Safety Code § 11377(a). (*Id.*, Ex. F at 020–021,
14 Ex. G at 025.) On April 14, 2008, Petitioner was convicted of possessing an undetectable weapon in
15 violation of Cal. Penal Code § 12020(a)(1). (*Id.*, Ex. A at 003, Ex. F at 016, Ex. G at 025.)

16         On March 27, 2009, the Department of Homeland Security ("DHS") ordered Petitioner to
17 appear for removal proceedings before the Immigration Court after determining *inter alia* that
18 Petitioner's conviction for a theft offense constituted an aggravated felony as defined by 8 U.S.C. §
19 1101(a)(43)(G), making him removable under 8 U.S.C. § 1227(a)(2)(A)(iii). (*Resp't's Mot. for Summ.*
20 *J.*, Ex. A at 003–004.) During the removal proceedings, the Immigration Judge granted Petitioner two
21 continuances in order to obtain evidence establishing derivative citizenship. (*Id.*, Ex. B, Ex. C, Ex. G
22 at 025.) After Petitioner was unable to provide the documentation necessary to establish derivative
23 citizenship, the Immigration Judge determined that Petitioner failed to establish derivative citizenship
24 and concluded that Petitioner's various criminal convictions were aggravated felonies and crimes of
25 moral turpitude. (*Id.*, Ex. H at 037–038.) The Immigration Judge ordered that Petitioner be removed.

26         On September 30, 2009, the Board of Immigration Appeals ("BIA") issued a decision
27 upholding the Immigration Judge's removal order. (*Id.*, Ex. J.) On October 23, 2009, Petitioner filed
28 a petition for review in the Ninth Circuit Court of Appeals asserting that the Immigration Judge erred

when he determined that Petitioner's convictions constituted aggravated felonies and crimes of moral turpitude. (*Id.*, Ex. K.) Although Petitioner did not raise any argument regarding his derivative citizenship claim on appeal to the BIA or the Ninth Circuit Court of Appeals, the Ninth Circuit Court of Appeals nevertheless transferred the matter to this Court for a *de novo* determination of Petitioner's derivative citizenship claim. (*Id.*, Ex. N.)

## LEGAL STANDARD

A moving party is entitled to summary judgment only if the moving party can demonstrate that (1) "there is no genuine issue as to any material fact," and (2) it is "entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002). In the absence of genuine issues of disputed fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

## ANALYSIS

### I. Jurisdiction

This case comes before the Court on a transfer order issued by the Ninth Circuit Court of Appeals pursuant to 8 U.S.C. § 1252(b)(5)(B), which provides:

> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in that district court under section 2201 of title 28, United States Code.[1]

Because the Ninth Circuit panel determined that a genuine issue of fact existed, it transferred the action to this Court to issue a decision regarding Petitioner's nationality. (Doc. No. 1.)

---

[1] The Court notes that its jurisdiction is limited solely to resolving genuine issues of material fact that exist in the context of a derivative citizenship claim. As further explained below, the parties do not dispute the facts contained in the record, but rather dispute whether the facts establish a legal separation as contemplated by former Section 321. The dispute requires the resolution of questions of law, which the Court believes to be within the Ninth Circuit's exclusive jurisdiction. *See Minasyan v. Gonzalez*, 401 F.3d 1069, 1074 n.8 (9th Cir. 2005). In light of the Ninth Circuit's order of transfer, however, the Court nevertheless addresses Petitioner's derivative citizenship claim in its entirety.

**II.     Derivative Citizenship**

Although subsequently repealed by the Child Citizenship Act of 2000, former Section 321 of the Immigration and Nationality Act ("INA") governs Petitioner's claim to derivative citizenship.[2] Former Section 321 provides:

> (a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . .; and if
> (4) Such naturalization takes place while such child is under the age of sixteen years; and
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of . . . the parent naturalized under clause (2) or (3) of this subsection . . . .

8 U.S.C. § 1432(a) (2000). Petitioner contends that he is entitled to derivative citizenship under 8 U.S.C. § 1432(a)(3)–(5). The parties do not dispute that Petitioner's mother was nationalized in 1999, when Petitioner was 16 years old, thus satisfying section (a)(4) of the statute. (*Resp't's Mot. for. Summ. J.*, Ex. E.) The parties also do not dispute that Petitioner was residing in the United States as a lawful permanent resident when his mother was naturalized, thus satisfying section (a)(5) of the statute. (*Id.*, Ex. A at 002–003, Ex. G at 025–026.) Based on the foregoing facts, the parties concede that the only issue to be decided by this Court is whether Petitioner has established that Petitioner's mother was naturalized when (a) she had legal custody over Petitioner, and (b) Petitioner's parents were legally separated. (*Id.* at 1:7–16, 5:12–24; *Pet'r's Opp'n* at 6:8–12.)

**1      Legal Separation**

*a.      Choice of Law*

In *Minasyan v. Gonzalez*, the Ninth Circuit determined that the meaning of the term "legal separation" as contained within former Section 321 is a question of federal statutory interpretation. 401 F.3d 1069, 1076 (9th Cir. 2005). Noting that the INA did not did not define the term and there is

---

[2]The Child Citizenship Act of 2000, Pub.L. No. 106–395, Title I, § 103(a), 114 Stat. 1632 effectively repealed section 321 of the INA, 8 U.S.C. § 1432, on February 27, 2001. The Ninth Circuit has held that the Child Citizenship Act of 2000 does not have retroactive effect. *Hughes v. Ashcroft*, 255 F.3d 752, 760 (9th Cir. 2001).

1  no federal law of domestic relations, the Court determined that the term "legal separation" necessarily
2  means "a separation recognized by state law." *Id.* Moreover, the definition of the term must come from
3  the state with jurisdiction over Petitioner's parents' marriage. *Id.* at 1077.

4  Petitioner identifies three potential locales that may have jurisdiction over Petitioner's parents'
5  marriage: (1) North Carolina, where Petitioner's mother ultimately obtained a divorce from
6  Petitioner's father; (2) California, where "much of the marriage took place;" or (3) Romania, where
7  Petitioner's parents were married and Petitioner's father now resides. (*Pet'r's Opp'n* at 8:24–9:16.)
8  Although Petitioner contends that the laws of all three jurisdictions provide support for a finding of
9  legal separation, he admits that "[b]ecause Petitioner's mother was domiciled in North Carolina when
10 she filed for divorce, North Carolina properly had jurisdiction over [Ms. Dantos's] marital status, in
11 spite of the fact that Petitioner's father never lived there." (*Id.* at 8:24–9:4.) Despite this apparent
12 concession, Petitioner nevertheless argues that jurisdiction may run concurrently in California and
13 Romania as well. Respondent contends that North Carolina has jurisdiction over Ms. Dantos's marital
14 status and also that Petitioner's argument that more than one state can have jurisdiction to determine
15 legal separation is not supported by the law. (*Resp't's Reply* at 3:4–4:4.)

16 Petitioner relies on a footnote in *Minasyan* to support his contention that all three jurisdictions
17 could provide the definition of "legal separation." Although the Ninth Circuit in *Minasyan* identified
18 California as the appropriate jurisdiction, it stated in a footnote that the presumption that state law
19 controls "does not mean that a State would be entitled to use the [term at issue] in a way entirely
20 strange to those familiar with its ordinary usage." 401 F.3d at 1077 n.14. The Court then offered an
21 example in which the relevant state or nation might not find a "legal separation" even though the
22 effect was "a drastic change in the couple's marital existence [such] that the couple may be considered
23 legally separated for purposes of [§ 321(a)(3)]." *Id.* (quoting *Brissett v. Ashcroft*, 363 F.3d 130, 133
24 (2d Cir. 2004)). The Ninth Circuit stated that in that situation, "the rule of the state with jurisdiction
25 over the marriage might not control." *Id.* Even if this language was binding precedent, it does not
26 support Petitioner's position. Clearly, the Ninth Circuit was contemplating only that the Court may
27 still find a "legal separation" despite the fact that a particular jurisdiction did not define the event as
28 such. The Court finds no basis to infer that this language stands for the proposition that multiple

1  jurisdictions might govern a particular marriage, as Petitioner contends.

2  Here, Petitioner's mother sought a divorce in the state of North Carolina. Because Petitioner's mother was a citizen and resident of the State of North Carolina for at least six months, and the parties had been separated for at least one year, the North Carolina court assumed jurisdiction over the marriage and granted Petitioner's mother an absolute divorce from Petitioner's father. (*Pet'r's Opp'n*, Ex. A.) In light of the fact that Petitioner's mother ultimately obtained the divorce in North Carolina, the Court finds North Carolina to be the appropriate jurisdiction to determine when Petitioner's parents were legally separated. The Court finds this result proper in light of North Carolina's clear assumption of jurisdiction over the marriage, the absence of any other state court order assuming jurisdiction, and the apparent concession by both parties that North Carolina is the most appropriate jurisdiction.

### b. *Legal Separation*

North Carolina permits the dissolution of a marriage "if and when the husband and wife have lived separate and apart for two years, and the plaintiff or defendant . . . has resided in the State for a period of six months." N.C. Gen. Stat. § 50-6. *See also Mallard v. Mallard*, 68 S.E. 2d 247, 248 (N.C. 1951). "A husband and wife live separate and apart for the prescribed period within the meaning of G.S. 50-6 when, and only when, these two conditions concur: (1) They live separate and apart physically for an uninterrupted period of two years; and (2) their physical separation is accompanied by at least an intention on the part of one of them to cease their matrimonial cohabitation." *Id.* (citing *Young v. Young*, 34 S.E. 2d 154 (N.C. 1945)). The Supreme Court of North Carolina has held that there must be a "complete cessation of cohabitation," and that the discontinuance of sexual relations alone is not sufficient to establish that the couple was living "separate and apart" under North Carolina law. *Dudley v. Dudley*, 33 S.E. 2d 489, 490–91 (N.C. 1945).

It is undisputed that Petitioner has no judicial decree establishing a legal separation. In the North Carolina order granting Petitioner's mother a divorce, however, the North Carolina court issued the following finding of fact: "Plaintiff and Defendant separated on or about July 2003, and have lived continuously separate and apart from each other for more than one (1) year next preceding the institution of this action with the intention on the part of Plaintiff not to resume the marital

1 relationship." (*Pet'r's Opp'n*, Ex. A.) Although the document is not a judicial decree of legal
2 separation, the Ninth Circuit has held that "because the term 'legal separation' cannot possibly be
3 limited to orders expressly so titled, we conclude that it encompasses other forms of court-ordered
4 recognition of the final breakup of a marriage." *Minasyan,* 401 F.3d at 1078. In *Minasyan*, the Ninth
5 Circuit specifically held that a statement contained within a judgment of dissolution was sufficient to
6 establish the date of legal separation. *Id.* at 1079.

7 Petitioner contends that the statement contained within the divorce decree is sufficient to
8 establish that Petitioner's parents were legally separated in July 2003, when he was 20 years old, thus
9 establishing a "legal separation" under subsection (3). Respondent disagrees and contends that the
10 legal separation must have occurred prior to Petitioner's eighteenth birthday. (*Resp't's Reply* at
11 1:19–3:1.) In support of his position, Petitioner contends that because subsections (4) and (5) state that
12 both the parent's naturalization and the child's admission as a lawful permanent resident must occur
13 before the child turns eighteen, but such a requirement is absent from subsection (3), the legal
14 separation does not have to occur prior to the child's eighteenth birthday. (*Id.* at 11:19–21.) Instead,
15 Petitioner contends that the statute's use of the term "child" requires only that the legal separation
16 occur while the person is still considered a "child" under the INA. Because the INA defines the term
17 "child" as an unmarried person under 21 years of age, Petitioner contends that he satisfies subsection
18 (3). (*Pet'r's Opp'n* at 11:5–18 (citing 8 U.S.C. § 1101(c)(1)).)

19 Although no court within the Ninth Circuit has specifically addressed the issue raised by
20 Petitioner, the Ninth Circuit in *Minasyan* implicitly interpreted the statute to require that the legal
21 separation occur while the alien is under the age of eighteen. *See, e.g.*, *Minasyan*, 401 F.3d at 1074,
22 1080 n.20 (determining whether the petitioner had established his parents' legal separation occurred
23 prior to his eighteenth birthday). Furthermore, the Court finds support for Respondent's position that
24 the "legal separation" must have occurred prior to the petitioner's eighteenth birthday in cases outside
25 the Ninth Circuit. In *Langhorne v. Ashcroft,* the Second Circuit rejected the exact argument Petitioner
26 makes here. 377 F.3d 175, 179 (2d Cir. 2004). In reaching its holding, the Second Circuit assessed the
27 grammatical structure and word usage of Section 321(a) and determined that "[a] natural reading of
28 these terms, taken together, therefore requires *all* of the conditions in Section 321(a)(3)—including

1  "a legal separation of the parents"—to occur before the child turns eighteen." *Id*. The Court also
2  determined that the legislative intent confirmed the imposition of a derivative citizenship cut-off at
3  age eighteen. *Id.* at 180–81 ("Thus the overarching statutory scheme that was in place when
4  [Petitioner] claims he was covered by Section 321(a) was clearly keyed to the age of eighteen.").

5  Finally, it appears that courts outside the Ninth and Second Circuits that have considered
6  derivative citizenship claims have also endorsed the view that the legal separation must have occurred
7  prior to the child reaching the age of eighteen. *See, e.g, Morgan v. Att'y Gen. of the U.S.*, 432 F.3d
8  226, 228 (3d Cir. 2005) ("Under . . . 8 U.S.C. § 1432(a), a child born outside the United States
9  automatically acquires United States citizenship if, while the child is under the age of eighteen, the
10 parent with legal custody of the child is naturalized while that child's parents are legally separated.");
11 *Fierro v. Reno*, 217 F.3d 1, 4 (1st Cir. 2000) ("Fierro's claim of citizenship requires that there have
12 occurred, while he was under 18 and a permanent resident, 'the naturalization of the parent having
13 legal custody of the child.'"); *Henry v. Quarantillo*, 684 F. Supp. 2d 298, 310 (". . . § 1432(a)(3)'s
14 three requirements—naturalization of the custodial parent, legal custody, and a legal separation—all
15 are modified by the clause contained in § 1432(a)(4): 'Such naturalization takes place while such child
16 is under the age of eighteen years.'"); *Lancaster v. Gonzalez*, 2006 U.S. Dist. LEXIS 91634, at (W.D.
17 La. Oct. 2, 2006) (holding that petitioner "failed to establish an essential element of his claim of
18 derivative citizenship; that his parents were legally separated prior to his eighteenth birthday"). In
19 light of the foregoing, the Court finds Petitioner's contention that the July 2003 separation satisfies
20 the requirement of former Section 321 to be without merit.

21 In the alternative, Petitioner contends that the Court should consider evidence that implies a
22 separation date that precedes the July 2003 date identified by the North Carolina court. In *Minasyan*,
23 the Court declined to consider "whether, in the absence of a judicial order, a complete and final break
24 in a California marital relationship would constitute a legal separation within the meaning of §
25 321(a)(3)." 401 F.3d at 1079 n.19. Here, like in *Minasyan*, there is a court order of separation that
26 places the date of separation on or about July 2003. Thus, the Court finds it unnecessary to determine
27 whether a separation may have occurred at a prior date. This conclusion makes it unnecessary to reach
28 the issue of whether petitioner was in his mother's sole legal custody.

For the foregoing reasons, the Court **GRANTS** Respondent's motion for summary judgment and denies Petitioner's derivative citizenship claim. The court of appeals held its proceedings in abeyance and transferred this matter to the undersigned only for the limited purpose of issuing a *de novo* decision regarding nationality. Because the Court has determined that Petitioner is not entitled to derivative citizenship, the Clerk shall certify the record, including this Order, and transmit the case file to the United States Court of Appeals for the Ninth Circuit for further proceedings.

**IT IS SO ORDERED**.

DATED:  September 2, 2010

Hon. Michael M. Anello
United States District Judge

For the foregoing reasons, the Court **GRANTS** Respondent's motion for summary judgment and denies Petitioner's derivative citizenship claim. The court of appeals held its proceedings in abeyance and transferred this matter to the undersigned only for the limited purpose of issuing a *de novo* decision regarding nationality. Because the Court has determined that Petitioner is not entitled to derivative citizenship, the Clerk shall certify the record, including this Order, and transmit the case file to the United States Court of Appeals for the Ninth Circuit for further proceedings.

**IT IS SO ORDERED**.

DATED:  September 2, 2010

Hon. Michael M. Anello
United States District Judge